Argued June 16, affirmed July 14, 1914.

# OREGON–WISCONSIN TIMBER CO. *v.* COOS COUNTY.*

### (142 Pac. 575.)

**Elections—Qualifications of Voters—Power to Regulate.**

1. While the right of suffrage is not a vested right, but a franchise dependent on law, and the only restriction on the power of states to regulate it is in the 15th Amendment to the United States Constitution, providing that the right of citizens of the United States to vote shall not be denied or abridged on account of race, color or previous condition of servitude, yet, when the suffrage is granted by the state Constitution, it cannot be abridged or its enjoyment impeded by the legislature, except by legislation merely regulating its exercise and not amounting to a denial thereof.

**Elections—Qualifications of Voters—Constitutional Provisions.**

2. In Article II, Section 2, of the Constitution, prescribing the qualifications of electors in all elections not otherwise provided for by

* The question of federal control of elections under the 15th Amendment forbidding abridgment of right to vote on account of race, color or previous condition of servitude is treated in a note in 53 L. R. A. 668.

As to the validity of statutory regulations of voters, see note in 25 L. R. A. 484.     REPORTER.

the Constitution, the word "elections" does not include all acts of voting or selection, but refers only to election of public officers, and Section 6391, L. O. L., prescribing different qualifications for voters at an election to authorize a special tax in a road district, does not violate the constitutional provision.

**Statutes—Sufficiency of Provisions—Certainty and Definiteness.**

3. Section 6391, L. O. L., prescribing the qualifications of voters at any district road meeting, is not void for failure to provide means to determine who were qualified to vote or to fix authority in anyone to determine the qualifications of voters, in view of the provision that in all other respects the laws governing school district meetings shall control elections of road district meetings, and Section 4089, L. O. L., providing for the election of a chairman and secretary of a school meeting and procedure relating to challenges of voters, and Section 6385 requiring district road meetings to be conducted in an orderly manner and to be governed by Roberts' Rules of Order.

From Coos: John S. Coke, Judge.

This is a suit by the Oregon-Wisconsin Timber Holding Company, a corporation, against Coos County, Oregon; Road District No. 12, of Coos County, Oregon; James Watson, as County Clerk of Coos County, Oregon, and W. W. Gage, as Sheriff of Coos County, Oregon, in which plaintiff seeks to have Section 6391, L. O. L., declared void. There was a decree in the lower court for the defendants, and plaintiff appeals. The facts are set forth in the opinion of the court. Affirmed.

For appellant there was a brief over the names of *Mr. John D. Goss* and *Mr. J. C. Kendall,* with an oral argument by *Mr. Goss.*

For respondents there was a brief and an oral argument by *Mr. Lawrence A. Liljeqvist.*

Department 2. Mr. Justice McNary delivered the opinion of the court.

The resident taxpayers of road district No. 12, Coos County, Oregon, on November 6, 1912, voted a special tax of ten mills on the dollar, upon all the taxable real

and personal property within the district, for the purpose of assuring a fund of money with which to defray the expenses of the improvement of a well-known road in the district. The plaintiff is a corporation existing under the laws of the State of Wisconsin, and owner of a section of land in the district, and as such proprietor complains bitterly at the action of the taxpayers in voting the tax upon its property, and in this litigation seeks to overthrow Section 6391, L. O. L., upon the theory that it is violative of Article II, Section 2, of the Constitution, because: (1) It limits the elective franchise to owners of real property. (2) It extends the elective franchise to females. The section of the statute assailed reads:

"Any citizen of this state, male or female, who is twenty-one years of age, and has been a *bona fide* resident of the district for thirty days immediately preceding the meeting or election, and has real property in the district, the title to which is in his or her own name, on which he or she is liable or subject to pay a tax, shall be entitled to vote at any district road meeting. In all other regards the laws of this state governing school district meetings shall control elections of all road district meetings."

The organic law (Article II, Section 2), in prescribing the qualifications of electors, says:

"In all elections not otherwise provided for by this Constitution, every white male citizen of the United States, of the age of twenty-one years and upward, who shall have resided in the state during the six months immediately preceding such election; and every white male of foreign birth of the age of twenty-one years and upward, who shall have resided in the United States one year, and shall have resided in this state during the six months immediately preceding such election, and shall have declared his intention to become a citizen of the United States one year preced-

ing such election, conformably to the laws of the United States on the subject of naturalization, shall be entitled to vote at all elections authorized by law.''

1. Safely it may be said that the right of suffrage is not an absolute unqualified personal right, but a franchise dependent upon law. None of the law-writers include the right to vote among the rights of property or of person. The only restriction on the power of the states to regulate the qualifications of electors is to be found in the fifteenth amendment to the federal Constitution, which provides that the right of citizens of the United States to vote is not to be denied or abridged by the United States, or by any state, on account of race, color, or previous condition of servitude. Subject to this constitutional restriction, the states have exclusive power to regulate the right of suffrage and to determine the class of inhabitants who may vote: *Kinneen* v. *Wells,* 144 Mass. 497 (11 N. E. 916, 59 Am. Rep. 105); *Washington* v. *State,* 75 Ala. 584 (51 Am. Rep. 479). While the elective franchise is a privilege rather than a vested right, yet, when it has been granted by the Constitution, it cannot be abridged or its enjoyment impeded by the legislatures, except legislation may be enacted which merely regulates the exercise of the elective franchise, and does not amount to a denial thereof: *Lively* v. *Litchfield,* 47 Or. 248 (83 Pac. 142, 114 Am. St. Rep. 920); 18 Cent. Dig., ''Elections,'' par. 8.

2. Returning to a consideration of Article II of Section 2 of the fundamental law, it will be noticed that, in ''all elections'' not otherwise provided for by the Constitution, every white male citizen of the United States of the age of 21 years and upward, who has resided in the state during the six months immediately preceding such election, shall possess the qualifications

of an elector.   Controlling in the interpretation of the Constitution is the definition of the term "election"; that is, whether the term as used in the Constitution must be construed to have reference to the choice of officers alone, or such action that might be taken in a road district affecting its administrative or pecuniary affairs.

The length and breadth of the word "election" must be measured by the concept intended by the fathers of the organic law, as the meaning the term conveyed to them necessarily marks the limit of its application. The source of their knowledge of words reposed largely then, as it does now, in the lexicons and decided cases of that day.   Therefore, as we retrospect to a period coeval with the adoption of our Constitution, we find that the word was understood in a sense more restricted than at the present time.   Etymologically election denotes choice; selection.   Burrill's Law Dictionary, published in 1850, and compiled on the basis of Spelman's Glossary, and adapted to the jurisprudence of the United States, says "election is to choose one or the other, and not every one of them successively."   In the twelfth edition of Bouvier's Law Dictionary, published in 1867, Volume 1, page 519, it is said that an "election" means a "selection of one man from amongst more to discharge certain duties in a state, corporation, or society"; and this definition is in accord with the authorities generally: *Coggeshall* v. *City of Des Moines,* 138 Iowa, 730 (117 N. W. 309, 128 Am. St. Rep. 221); *Mayor Town of Valverde* v. *Shattuck,* 19 Colo. 104 (34 Pac. 947, 41 Am. St. Rep. 208); *Woodley* v. *Town Council of Clio,* 44 S. C. 374 (22 S. E. 410); *Maynard* v. *Board of Canvassers,* 84 Mich. 228 (47 N. W. 756, 11 L. R. A. 332); *Seaman* v. *Baughman,* 82 Iowa, 216 (47 N. W. 1091, 11 L. R. A.

354); *Thornton* v. *Territory,* 3 Wash. Ter. 482 (17 Pac. 896). Though it must be admitted that there are cases which announce a contrary doctrine: *State* v. *Hirsch,* 125 Ind. 207 (24 N. E. 1062, 9 L. R. A. 170); *Hall* v. *City of Madison,* 128 Wis. 132, (107 N. W. 31).

In our judgment the word "election," as used in the Constitution, should not be given a general or comprehensive signification, including all acts of voting, choice, or selection, but rather in a restricted sense, as election of public officers.

In *Coggeshall* v. *City of Des Moines,* 138 Iowa, 730 (117 N. W. 309, 128 Am. St. Rep. 221), Mr. Chief Justice LADD said:

"Until comparatively recent times the word 'election,' when applied to political subjects, did not denote the choice of a principle, or the decision of a question of government, or the advice to governing bodies by the electors, and only when declared by the instrument itself to be sufficiently comprehensive to cover these matters has it been construed to have this extended meaning."

It cannot be denied that the voting of a tax is purely governmental action, and not an election, as understood by the framers of the Constitution. The constitutional language is clear, and, in the presence of such a condition, there is no room for construction. Under the circumstances, the plain language of the instrument must be taken to express the purpose of its framers.

The obvious purpose of the builders of the Constitution was to prescribe the general qualifications which citizens throughout the state were required to possess in order to entitle them to vote for public officers. Doubtless this view was planted upon the idea that all persons coming within the definition of the Constitution should participate in the election of persons

to public office.  But that, in matters pertaining to the administrative affairs of government, the legislature was not limited in its power to confer the right only upon those who contribute to the support of the government, by the payment of taxes,  The definition thus given to the word "election" has the sanction of this court in the case of *Board of Directors* v. *Peterson,* 64 Or. 46 (128 Pac. 837, 129 Pac. 123), where the court, through Mr. Chief Justice EAKIN, said:

"What the term 'all elections,' as used in Section 2, Article II, means is not disclosed, other than as gathered from the Constitution as a whole,  There are many elections provided for by law that clearly are not contemplated by this provision, such as in the case of cemetery associations, charitable and public service corporations.  Probably we might safely say that the framers of the Constitution intended thereby the election of all officers provided for in that instrument, as specified in Section 4, Article VI, Sections 1, 6, 7, Article VI, and other provisions.  This is the view taken by the Supreme Court of Kansas, as to Section 1, Article V, of the Kansas Constitution, which uses the term 'any election': *Wheeler* v. *Brady,* 15 Kan. 26.  And a like interpretation is given Section 1, Article VII, of the Illinois Constitution, containing similar words: *People* v. *English,* 139 Ill. 622 (29 N. E. 678, 15 L. R. A. 131); *Plummer* v. *Yost,* 144 Ill. 68 (33 N. E. 191, 19 L. R. A. 110).  The Supreme Court of Florida holds to the same effect: *State ex rel.* v. *Dillon,* 32 Fla. 545 (14 South. 383, 22 L. R. A. 124).  And this court has given practically the same construction to our Constitution in *Harris* v. *Burr,* 32 Or. 348, 367 (52 Pac. 17, 20, 39 L. R. A. 768)."

It necessarily follows from this view that Section 6391, L. O. L., is not in contravention of Section 2, Article II, of the Constitution.

3. Counsel for plaintiff also contend that the law is void because "it provides no means of determining

who are entitled to vote, nor whether those present were so entitled, nor who was present or voted, and vests in no authority the right to determine the qualifications of a voter." After defining a voter, at a district meeting, Section 6391, L. O. L., states that in all other regards the laws governing school meetings shall control elections of all road district meetings, Turning to Section 4089, L. O. L., it will be seen to prescribe in detail the manner of holding elections in school district meetings. Section 6390, L. O. L., provides that the road supervisor shall be *ex-officio* chairman of all road district meetings, but in case of his absence the meeting shall elect a temporary chairman, among their own members, who shall be a legal voter of the road district, and they shall also elect a secretary, whose duty it shall be to keep the minutes of the meeting, which shall be approved and signed by the chairman and secretary, and, when certified by the chairman, shall be transmitted to the clerk of the county court, who shall preserve the minutes with other records of the road district.

Upon a further reading of Section 4089, L. O. L., it will be observed that any person shall be deemed to have complied with the property qualification who presents to the chairman satisfactory evidence that he or she has real property in the district. The chairman or any qualified elector is authorized to challenge any person who offers to vote at such meeting, and, in case an elector is challenged as disqualified, it shall be the duty of the chairman to administer to such person an oath that he or she will truly answer all questions propounded touching the place of residence and qualifications as elector. Section 6385, L. O. L., also specifies that all district road meetings shall be con-

ducted in a decent and orderly manner and shall be governed by "Roberts' Rules of Order."

From this brief review of the sections of the statute applicable to meetings of this character, we feel that plaintiff's contention is without merit.

Lastly, a reversal of the decree of the lower court is sought upon the hypothesis that special defects appear on the face of the proceedings. Having surveyed carefully every step taken by the defendants in the premises, we feel it unnecessary to encumber the record by a recital thereof, and conclude by saying that the proceedings conform to the statute and contain no defects sufficient to impair the legality of the tax imposed by the voters of the school district.

Judgment of the lower court must be affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.