Argued January 11, affirmed January 19, 1915.

## DU BOIS LUMBER CO. v. CLATSOP COUNTY.

(145 Pac. 653.)

Highways—Statutes—Taxation—Implied Repeal.

1. Section 6384 *et seq.*, L. O. L., providing that, whenever three freeholders of any road district shall petition the road supervisor to call a district road meeting of the voters of the district, the supervisor shall cause notice to be given, and shall hold a meeting for the improvement of highways and the levy of taxes therefor, was not superseded by General Laws of 1913, page 610, amending Section 6321, vesting the power to vote such additional taxes as they may deem advisable to improve the roads of a district in "resident taxpayers" of the district, etc.

[As to repeal of statute by implication, see notes in 14 Am. Dec. 209; 88 Am. St. Rep. 271.]

Highways—Improvement—Additional Road Tax—Valuation of Assessable Property in District—Certificate.

2. Where proceedings were instituted to improve certain highways at the expense of a highway district, under authority conferred by a meeting of legal voters of a road district, failure of the county clerk to furnish a certificate of the aggregate valuation of the assessed property of the district on application of the road supervisor, as required by Section 6383, L. O. L., was a mere irregularity, and did not vitiate the proceedings.

Highways—Improvement—Additional Tax—Description of Highways.

3. Where a resolution adopted at a road district meeting of legal voters for the improvement of highways and the levy of a tax so designated, the highways to be improved that there could be no mistake as to where the funds raised were to be expended, it was not defective for insufficiency of description.

Highways—Improvement—Resolution—Sufficiency.

4. A resolution adopted at a road district meeting for the improvement of highways and the levy of a tax therefor, specifying generally the character and extent of the proposed improvements, the amount to be expended, etc., sufficiently constituted compliance with Section 6387, L. O L., regulating the proceedings to be taken for the levy of a tax for highway improvements, etc., and was not objectionable for failure to show whether the road was to be macadamized or to be improved with corduroy, plank or hard surface improvement, or merely graded.

[As to power of taxation and for what purposes it may be asserted, see note in 8 Am. St. Rep. 506.]

Highways—Improvement—Road District Meeting—Chairman.

5. Section 6390, L. O. L., provides that the county road supervisor shall be *ex officio* chairman of all road district meetings of his district, and, in case of his absence or inability to act, the meeting shall elect a temporary chairman from its own members, who shall be a legal voter of the district. *Held* that, where a road district meeting at which a tax was levied for highway improvements, elected a chairman, omission of the minutes to show the reason why the road supervisor did not act as chairman did not affect the regularity of the proceedings.

From Clatsop: James A. Eakin, Judge.

Department 2.    Statement by Mr. Justice Bean.

This is a suit by the Du Bois Lumber Company against Clatsop County and others to restrain the collection of a special road tax in district No. 15.

The complaint contains the usual allegations in such cases showing that plaintiff is the owner of a large area of land in the road district named. It then sets out all the proceedings concerning the levying of the tax in that district, and alleges that plaintiff has tendered the payment of all its taxes except the road district levy.

A demurrer to the complaint was sustained and the suit dismissed.    Affirmed.

For appellant there was a brief over the names of *Mr. J. E. Magers* and *Messrs. Carey & Kerr,* with oral arguments by *Mr. Magers* and *Mr. Charles H. Carey.*

For respondents there was a brief with oral arguments by *Mr. C. W. Mullins,* District Attorney, and *Mr. George C. Fulton.*

Mr. Justice Bean delivered the opinion of the court.

The proceedings were initiated under the provisions of Section 6384, L. O. L. Under this section three freeholders petitioned the road supervisor to call a district road meeting of the legal voters of the district to determine, under the provisions of Section 6386 et seq., what, if any, county roads in the district should be improved, the character and extent of the improvements, and to levy a special tax to defray the expenses thereof. The petition, with the affidavit of the road supervisor authenticating the same, to the effect that the signers were freeholders and legal voters residing in the district, was made a part of the record of the meeting. Notices of the time, place and object of the meeting signed by the road supervisor were posted in three public places in the district more than 10 days prior to the meeting, as shown by the affidavit of the district supervisor. Pursuant to the petition and notices, a meeting of the legal voters, freeholders and taxpayers of the district was held on November 22, 1913. By a majority vote a chairman and secretary were elected, the road supervisor acting as temporary chairman. A resolution was passed requiring the secretary to keep a record of the proceedings of the meeting and proof of posting of notices thereof, and

to file the same with the county clerk. The following resolution was adopted by a majority vote:

"Resolved, that the following county roads in this district be improved in the manner following, to wit: That portion of road No. 15 lying between road No. 77 and Mr. H. Behneke's place, and road petitioned by Adolph Cook and others, and that portion of road lying between south end of Nehalem bridge and Chas. Gronnel's place, and the portion of road extending from main county road on south side of Nehalem bridge in an easterly direction to McKay Creek. It is recommended that $400 be expended on Adolph Cook road, $500 on road leading to Behneke's, $1,800 on that leading to Chas. Gronnel's place, and $200 on road running to McKay Creek, and the balance of the five (5) mill levy be expended on the main county road between James Jamison's place and end of road of road district No. 15 near Elsie. * *

"Resolved, that there be, and hereby is, levied a special tax of five (5) mills on the dollar upon all the taxable real and personal property of this district, for the purpose of raising money with which to defray the expenses of the special improvements heretofore by this meeting determined to be made."

By a majority of the voters present the following resolution was also passed:

"Resolved, that the proposed improvements and the character and manner thereof, and the rate of tax levied therefor, be submitted to the County Court, and that the secretary report back to this meeting the action taken by the County Court thereon."

The record of the meeting, including the resolutions above quoted, was certified by the chairman and secretary, and filed with the county clerk November 25, 1913. The minutes of an adjourned meeting held November 28, 1913, show that the County Court approved the resolutions and the levy of a special tax; that all action taken was ratified by the voters of the

district, and the record thereof certified by the county clerk.

1. The plaintiff assigns that the court erred in sustaining the demurrer and in dismissing the complaint. It contends that the record does not disclose a compliance with the law, and that the tax is void. It is urged by counsel for plaintiff that Section 6384, which is Section 70 of the act of 1903 (Laws 1903, p. 283), was superseded, though not in terms, by the act of 1913 amending Section 6321, L. O. L. (Gen. Laws 1913, p. 610); that the latter act is incompatible with the former; that it was not the intention to provide two methods by which road district taxpayers should convene for the purpose of voting special road taxes; and that there was not a compliance with the terms of the law of 1913. This latter act vests the power to vote such additional tax as they may deem advisable to improve the roads of the district in "resident taxpayers" of such district. The requirements, so far as considered necessary to note, are: (a) At least 10 per cent of taxpayers of the district shall give notice. (b) Notices shall be posted by the road supervisor of the district by posting in three public places in the district and at the county courthouse at least 10 days prior to the meeting. (c) One notice shall be published at least three weeks in a weekly newspaper of general circulation in the county. (d) The notices shall be signed by at least 10 per cent of the taxpayers of the road district, and shall give the time, place and object of the meeting, which shall be held in the month of November. (e) Proof of posting notices shall be made by affidavit of the road supervisor and submitted to the meeting together with proof of publication. (f) At the time of the meeting it shall be organized by the election of a chairman and secretary. It

will be noted that provision is made in the act of 1913 for raising funds to improve the roads of the district, without specifying any special road or roads or portions thereof, as mentioned in Section 6384 et seq., L. O. L. The limitation as to the amount of the levy contained in the law of 1903 is not found in the later enactment. The scope and purpose of the two statutes are not the same. A complete system of road law was enacted in 1903. If we go back of that law and notice the act of 1893 (Laws 1893, p. 185; B. & C., § 4795 et seq.), we find detailed and voluminous provisions for petitioning the County Court for, and remonstrating against, improving a road or portion thereof by grading, macadamizing, etc.; for the viewing and surveying of the same; for reports and hearings; for the assessment of the costs and expenses of the improvements, less the benefits upon all the land within three miles of such improvements; for the advertisement and letting of the contract and many other details; and providing for an appeal to the Circuit Court. It would seem that, this law not being satisfactory, in 1903, Section 6384 et seq., was adopted as a more convenient and practical method of making special improvements upon certain roads or portions thereof.

In the consideration of the case at bar we are not concerned with the efficacy or expediency of the provisions of the act of 1913 amending Section 6321. Neither the original act of 1909 nor the last amendatory statute expressly or impliedly repealed or amended the act of 1903: See *Leffingwell* v. *Lane County,* 64 Or. 144 (129 Pac. 538). Repeal of a statute by implication is not favored. It is the duty of the court, if possible, to so construe the acts that both will be operative. A general statute without negative

words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent: Sedgwick, Const. of Stat. & Const. Law (2 ed.), p. 97; 8 Cyc. 748. Sutherland on Statutory Construction, Section 465, states the general principle, as summed up in *Winslow* v. *Morton,* 118 N. C. 486 (24 S. E. 417), as follows:

"(1) That the law does not favor a repeal of an older statute by a later one by mere implication, (2) The implication, in order to be operative, must be necessary, and, if it arises out of repugnancy between the two acts, the later abrogates the older only to the extent that it is inconsistent and irreconcilable with it. * * A later and an older statute will, if it is possible and reasonable to do so, be always construed together, so as to give effect not only to the distinct parts or provisions of the latter, not inconsistent with the new law, but to give effect to the older law as a whole, subject only to restrictions or modifications of its meaning, when such seems to have been the legislative purpose. * * A law will not be deemed repealed because some of its provisions are repeated in a subsequent statute, except in so far as the latter plainly appears to have been intended by the legislature as a substitute."

In a recent opinion of this court by Mr. Justice Ramsey in *Beirl* v. *Columbia County,* 73 Or. 107 (144 Pac. 457), proceedings for the levy of a tax by virtue of Sections 6384–6392 were upheld, thus giving the act under consideration in the case at bar full force.

2. It is further contended by counsel for the plaintiff that the proceedings in question do not conform to the requirements of Section 6384 et seq. Section 6383 provides that, on the application of any road supervisor or three resident freeholders of a road district, the county clerk shall furnish a certificate showing the aggregate valuation of the assessable property of the

road district. The record does not show that such certificate was procured. In reviewing the record of a meeting of the legal voters of a road district levying a road tax, it is safe to take the rule stated in Cooley, Taxation (2 ed.), page 337:

"In voting the tax the people will be acting in their political capacity, and their action is to be favorably construed, and not to be overruled or set aside by judicial or any other authority, so long as they keep within the power bestowed upon them. Technical defects and irregularities should be overlooked, so long as the substance of a good vote sufficiently appears, for the obvious reason that local business is largely and of necessity in the hands of plain people who are unskilled in the technicalities of law and unaccustomed to critical or even accurate use of language. A strict construction of their doings would inevitably be mischievous, and would defeat the collection of revenue in very many cases. It will be found, therefore, that the courts sustain such action whenever sufficient appears to make plain the intent of the voters, provided the intent is warranted by law."

Section 6386, L. O. L., directs:

"District road meetings legally called shall have power to determine what, if any, county roads or portions thereof of the road district shall be improved in any special manner, and to determine the extent and character of the improvement or improvements they shall make thereon; provided, however, that the proposed improvements, and the character and manner thereof, shall have first been submitted to the County Court; and shall have power to levy a special tax, not to exceed ten mills on the dollar, upon all the taxable real and personal property of the district, for the purpose of raising money with which to defray the expense of such special improvement or improvements, and such levy shall be based upon the valuation of the taxable property of the district as shown by the last

certificate of the county clerk next preceding the district road meeting at which the tax is levied.''

It is evident from a reading of the statute that the provisions for the obtainment of a certificate of the aggregate valuation of the taxable property of the district is a means for the voters of the district to secure information in order that they may vote intelligently upon the question of tax. The procuring of such certificate is not by the terms of the statute made a condition precedent to levying a tax. It is not alleged in the complaint that on account of the failure to procure such certificate the voters of the district made any error in levying the tax, or that the amount of the tax is unreasonable, or that any part thereof is unnecessary to improve the roads described. The statute does not require that such certificate, which is in the nature of a matter of evidence, should be made a part of the minutes of the meeting. At the most, the failure to obtain the certificate, if there was a failure, would be an irregularity only, and would not vitiate the proceedings of a road district meeting legally called.

3. It is next contended that the resolutions adopted at the road district meeting did not sufficiently describe the county roads or portions thereof which it was proposed to improve. A careful examination of the description of the roads contained in the resolution above set forth leads us to believe to the contrary. The roads are so delineated that there can be no mistake as to where the funds proposed to be raised are to be expended. They refer to the county record of the road, and plainly indicate the portions thereof to be improved. While the descriptions contained in the resolution are necessarily general, we think they

74 Or.—27

would be sufficient, under the statute, for a description in the petition for the laying out of a county road, where there is reason for more definite description than in the resolution in question.

4. It is further urged on behalf of the plaintiff that the record of the meeting should show whether the road is to be macadamized or improved with corduroy, plank or hard surface improvement, or whether it is simply to be graded. Section 6387, L. O. L., referring to resolutions for improvement and levy of a tax, provides:

"If any road district in this state shall determine to specially improve any county road or roads, or portions thereof, in such district, and to levy a special tax to defray the expense thereof, as provided in the last preceding section, they shall do so by proper resolution, describing therein the road or roads, or portions thereof, they wish to improve; giving the initial and terminal points of the desired improvement or improvements, with the character and extent and estimated expense thereof, and also the rate of the tax levied, which resolution shall be signed by the chairman and secretary of the meeting, and transmitted to the County Court by its next regular meeting following, and shall also be spread upon the minutes of the district road meeting."

While the resolution is general as to the character and extent of the proposed improvements, the amounts to be expended are plainly stated, and the proceedings relating thereto are much more extended and specific than those approved by this court in *Beirl* v. *Columbia County,* 73 Or. 107 (144 Pac. 457). Applying the rule quoted from Judge Cooley that technical irregularities should be overlooked so long as the substance of a good vote sufficiently appears, we think the resolutions, taken as a whole, are a substantial compliance

with the statute, and sufficient in this respect to up-
hold the tax: *Oregon-Wisconsin Timber Co.* v. *Coos
County,* 71 Or. 462 (142 Pac. 575).   The record in the
last-named case shows that the proceedings were com-
menced upon the petition of three freeholders to the
road supervisor, the same as in the case at bar.

5. Section 6390, L. O. L., directs that the county
road supervisor shall be *ex-officio* chairman of all road
district meetings of his district.   In case of his ab-
sence or inability to act, the meeting shall proceed to
elect a temporary chairman from among its own mem-
bers, who shall be a legal voter of the road district.   A
competent secretary shall be elected, who shall keep
the minutes of the meeting.   These shall be submitted
to the chairman for his approval.   As approved, he
and the secretary shall sign the same, and, after he
has certified them, they shall be transmitted to the
county clerk.   It appears that at the time of levying
the tax in question the meeting elected a chairman.
The minutes do not disclose the reason for the road
supervisor not acting as such chairman.   We fail to
discover wherein any injury has been effected by such
proceeding.   It is not alleged in the complaint that the
acting chairman committed any errors or failed in any
way in the performance of his duties, or that the result
was in any way affected.   The writer has attended
New England town meetings, which were referred to
in the argument, and we think the proceedings of the
road district meeting were as full and technically cor-
rect as the usual proceedings in such town meetings
when levying a tax.   It would require a very strict
construction of the minutes in question to hold that
they were not sufficient.   They show the jurisdictional
facts, and the evidence of the levying of a tax affirma-
tively appears from the record of the meeting of the

legal voters of the district: *Leffingwell* v. *Lane County,* 64 Or. 144 (129 Pac. 538). It is also suggested that the minutes of the meeting do not show that the persons present had the required qualifications. However, it is recorded that "all persons present being taxpayers residing in and legal voters of such district," therefore we think this plainly indicates that the minutes, while not detailing all the qualifications, which would be impracticable, show that the members of the meeting were legal voters. The proceedings in this case are as full and specific as those in either the case of *Oregon-Wisconsin Timber Co.* v. *Coos County,* 71 Or. 462 (142 Pac. 575), or that of *Beirl* v. *Columbia County,* 73 Or. 107 (144 Pac. 457).

The requirements of the statute for the protection of the taxpayers as to notice and legality of the road district meeting have, we think, been strictly complied with. We find no failure to observe the letter of the law which tends to injuriously affect the taxpayer: 37 Cyc. 971, 972. To require a more strict or technical fulfillment of the special road tax law by the legal voters of a road district than is shown by the record in .the case under consideration would be to practically nullify the statute authorizing such tax.

The lower court held that the tax levy as set forth in the complaint was valid. This holding was correct. There was no error in sustaining the demurrer to the complaint and in dismissing the suit.

The judgment of the lower court is therefore affirmed.                                        Affirmed.

Mr. Chief Justice Moore, Mr. Justice Eakin and Mr. Justice Harris concur.